WM. REDMOND and F. M. SCOTT v. EDWARD STEPP.

*Boundary—Natural Objects—Course and Distance—Description in Complaint—New Trial—Motion in Arrest—Newly Discovered Evidence.*

1. When the question is one of *boundary* of a tract of land conveyed by a grant or deed, the Court decides what are the boundaries, and the jury ascertain where they are. If besides course and distance, natural objects, marked trees or lines of adjacent tracts are called for, these control course and distance ; but if they cannot be found, the course and distance must guide in fixing the boundary.

2. The two last calls in a grant being, "thence South 106 chains to a stake in the South Carolina boundary line; thence with said line East to the beginning," and it being conceded that such boundary line was south of the State line as now fixed, it was for the jury to fix that line as recognized at the date the grant was issued, and according to its intent, as appearing by reference to natural objects, &c., as then existing, rather than from course and distance, in case of conflict between them. But if that line could not be so ascertained, it was proper to follow course and distance, and the last corner thus being fixed, run direct to the beginning corner.

3. Land sued for being described in the complaint as Patent 250, and the grant having been introduced and a witness allowed to testify as to the identity of the land, without objection, the vagueness of the description was no ground for new trial, after a verdict, nor for a motion in arrest of judgment. If the objection had been made in due time, it could have been met by an amendment of the complaint.

4. It is in the discretion of the Court below to refuse, or to grant a new trial, because the verdict was *against the evidence,* as when it was *against the weight* of the evidence, and no appeal lies from its exercise.

5. When new evidence is discovered during the term, a motion for a new trial on account of it must be made to the Court which tried the case, and if denied, it will not be heard in the Supreme Court.

CIVIL ACTION, for recovery of land, tried before *Graves,* *J.,* at Spring Term, 1886, of the Superior Court of HEN-DERSON.

The facts appear in the opinion, in which the plat, on page 214, is referred to.

No counsel for the plaintiffs.

*Mr. T. F. Davidson* and *Mr. S. V. Pickens* (by brief), for the defendants.

SMITH, C. J. The object of the action, begun in March, 1882, is to establish title to and recover possession of a tract of land described in the complaint as "known as patent or grant No. 250," containing 36,494 acres (except certain tracts

within the designated boundaries before granted to others), issued on November 26th, 1796, to one Tench Coxe.

From him, it is not disputed, an unbroken line of conveyances has transmitted title to the plaintiffs.

The controversy between the opposing parties is one of boundary, and whether it includes a tract afterwards granted as No. 3732, of which the defendant was in the occupation, claiming it as his own.

The lines enclosing the large area in the grant to Coxe are very numerous, calling at times for natural objects, and again pursuing course and distance only, without other guides to their location, yet the beginning point is fixed at a conceded place, described as "beginning at a large poplar, marked, on the north side, R. H., on the west side and on the east side, R., standing on the South Carolina boundary, on a rich level, on the top of a high ridge, near a gap on said ridge, on the east side of said gap, below Williams' Mill, and runs north 32 chains to Pacolet crossing," &c.

The last call but one is "thence south 106 chains to a stake in the South Carolina boundary line," and the last, "thence, with said line, east to the beginning." The excepted tracts are numerous, and, in the aggregate, contain about 3,000 acres.

The controversy was about the location of the State boundary, as along it runs the line last called for in the grant to Coxe, and it is therein represented as running a due west course from the terminal point next preceding the last, an undefined distance along the State boundary to the initial point, or reversing the course, due east from the initial point to the next corner. If, therefore, the initial point is, as seems to be conceded, at the place on the diagram marked No. 1, Pop., the actual line dividing the territory of the two States, if ascertained, as it existed in 1796, when the grant issued, must be followed, and is the southern boundary of the land conveyed; and if it cannot be ascertained, the line must be

run a course east and west; and this is coincident with, and determines, in the absence of other evidence showing a different location, the position of the said dividing State boundary.

The plaintiffs' contention is, that as the runnings around the tract bring you to the terminus of the dark line at D., the last line must run therein direct to the beginning, and that this is the South Carolina line.

The defendant insists upon stopping the line next to the last, at its intersection with the red line, and thence direct to the beginning. Neither of these runs a course directly west, the red line as represented in the survey, north $86\frac{1}{4}$ west, and the black line in a reversed direction north $88\frac{1}{4}$ east, so that each diverges from a west course, but the plaintiffs in a less degree than the other.

At the close of the evidence, the defendant submitted a proposed written instruction to be given to the jury, and it was so given, in these words: (1.) " In doubtful questions of location as to lines, the intent of the contracting parties at the time controls everything but calls for a natural boundary, and that the original plat or diagram made at the time, and accompanying the grant, is evidence of such intent·

(2.) If the first and last corners called for in the plaintiffs' grant are in the South Carolina boundary line, and the last call from one of these points to the other, with the said South Carolina boundary line, the burden is on the plaintiff to locate said line, so as to include the possession of the defendant, and on failing to satisfy the jury of such, the plaintiffs cannot recover."

This instruction was not given, and to the refusal of the Court so to charge, the defendant enters his first exception.

Instead thereof, upon this point, the jury were told, in substance—for we do not undertake to set out the charge, which was very full and extended in words, but so much of it as will illustrate the exceptions—that the plaintiffs must

locate the land conveyed in the grant to Coxe, and show that the defendant is in possession of some portion of it, or they fail in their action. In determining the position of the surrounding lines, for the subsequent deeds, it is not denied, embrace the land in the patent, the rule of law is, that the Court adjudges what are the boundaries of a conveyed tract of land, and the jury ascertain where they are. If only course and distance are given, and the beginning is found,. the line will run by course and distance. But when, in addition to course and distance, natural objects, marked trees or lines of other tracts are called for, these, when shown, will control course and distance, and must be reached by a further extension, or shortening of the line, so as to reach such objects, trees, or adjoining tracts. If none such can be found, then the course and distance must be the guide in fixing the boundary. It is conceded that the dividing State boundary, as now established, is south of the *black* line claimed by plaintiffs, but the defendant insists, as it existed at the time of the grant, it was further north, at the red line. Our inquiry is, what lands were covered by the grant when it was made. If, guided by the instructions given, the jury shall ascertain the recognized line between the States, at the period of its issue, and that it was the intent of the parties to run to and stop at that line, then such must be the effect, but this intent must be ascertained from the provisions of the instrument, and the places of the natural objects, marked trees, or adjoining tracts, as they *then existed.* If there was then a line, known as " the South Carolina line," by which it is designated in the grant, that line, when located, will prevail over course and distance, in case of conflict between them. But if the jury are not satisfied upon this point from the evidence, course and distance must be followed, and when the last corner is reached, the line must run direct to the beginning.

To this responsive instruction, in place of that asked and refused, the defendant's second exception is entered.

After verdict, the defendant moved for a new trial, for the reason that the Court permitted evidence to identify the land described in the complaint, as Patent No. 250, by hearsay, or reputation, because of the vagueness of the descriptive reference.

The motion was refused, the grant having been introduced, and the witness, Watkins, allowed to testify to the identity without objection.

This is the defendant's third exception.

The defendant also asked, that the verdict be set aside: 1st. Because it was against the evidence under the instructions of the Court. 2d. For error in refusing an instruction, and in that given. 3d. For newly discovered evidence, which, if heard, would change the result of the finding by the jury.

This application being also denied, the defendant moved in arrest of judgment, because of the vague and indefinite designation of the land in the complaint.

This motion was also refused, and from the judgment rendered upon the verdict, the defendant appealed.

1. The charge which separates the functions of the Court from those of the jury in passing upon questions of boundary, has the clear sanction of past adjudications, and is, upon reason, well settled. *Tatem* v. *Paine,* 4 Hawks, 64; *Burnett* v. *Thompson,* 13 Ired., 379; *Marshall* v. *Fisher,* 1 Jones, 111; *Spruill* v. *Davenport,* Ib., 203; *Clark* v. *Wagoner,* 70 N. C., 706; *Dickson* v. *Wilson,* 82 N. C., 487.

The instruction has equally the support of past rulings as to the runnings when the calls are by course and distance, and also refer to natural objects or well-known lines of adjacent tracts, and the predominance of the latter, when they cannot be reconciled. *Dickson* v. *Wilson, supra; Miller* v. *Bryan,* 86 N. C., 167; *Jones* v. *Bunker,* 83 N. C., 324; *Strickland* v. *Draughan,* 88 N. C., 315; and among the older cases,

*Cherry* v. *Slade,* 3 Murph., 82; *Haughton* v. *Rascoe,* 3 Hawks, 21; *Hurley* v. *Morgan,* 1 D. & B., 425; *Brooks* v. *Britt,* 4 Dev., 481; *Slade* v. *Neal,* 2 D. & B., 61; *Becton* v. *Chesnut,* 4 D. & B., 335.

The charge covers so much of the second instruction as the defendant could properly ask, and there is no error to be found therein.

3d Ex. The objection, first made after verdict, to the indefinite terms in which the complaint describes the lands trespassed upon, is sufficiently answered in the fact that the grant or patent, referred to by its number, was produced in aid of the reference, and testimony given as to its location and lines, without opposition, to the jury. Thus the patent is incorporated in the complaint, and the trial proceeds as if the complaint specially and in detail set out the lines. There was no surprise, and the defendant was in no way damaged in his defence. If the objection had any force, it would be a case for amendment under sections 269 and 270 of *The Code.*

The other grounds for setting aside the verdict are also untenable.

(*a*) The objection that the verdict is against the evidence, is matter belonging to the discretion of the Judge, and is not within our appellate jurisdiction, whether exercised discreetly or not.

When it is alleged to be against the evidence, as against *the weight* of the evidence, the new trial, for this cause, can only be granted in the Court below. *Alley* v. *Hampton,* 2 Dev., 11. See also in this connection, in reference to the effect, as evidence of boundary of the plat annexed to a grant, *Pres. and Dir. Lit. Fund* v. *Clark,* 9 Ired., 58.

(*b*) The application based upon newly discovered evidence must be disposed of in a similar manner.

Where the new evidence is discovered *during the term,* it must be made, as in this case it has been made, to the Court

that tried the cause, the decision, whether granting or refusing the new trial; is conclusive of the result. It is necessary to refer to but a single case where the subject is discussed, and the rule declared. *Carson* v. *Dellinger*, 90 N. C., 226, affirmed in *Munden* v. *Casey*, 93 N. C., 97.

The rule which demands a *quantum* of evidence not possessed at the trial, as a condition for vacating the verdict, according to the established practice, is one acted on by the Court in which the cause is tried, and involves no assignable error which this Court can correct, for this Court acts upon the law arising upon *facts* found not upon *evidence* of the facts, and however strong the proposed proof may be, we cannot overrule the action of the trying Court and reverse what the Court does or refuses, however *positive the evidence* may be.

There is no principle of law involved in his ruling, and our jurisdiction is only to correct, when properly presented, erroneous rulings in law.

The motion in arrest of judgment is disposed of in what has been already said.

There is no error, and the judgment is affirmed.

No error.                                    Affirmed.